Nice, in France.   Dwyer & Co. devised and used the trade-mark long before purchases of oil were made either from Audemard or the société, and there was nothing, so far as these papers show, in the contracts either with Audemard or the société, which limited Dwyer & Co. to the use of the labels or trade-mark upon oil produced by them only.

It does not lie with the société to say that Rorke cannot use this label and trade-mark in his business as a merchant selling olive oil produced at Nice.   It declines and refuses to sell him oil, although it was notified that he was the purchaser of the contract on the sale of the assets of the co-partnership of which he was a member.   We do not mean to say that the société was bound to sell him oil, but it cannot be heard to say that Rorke cannot use the trade-mark and the label which he purchased; and Dwyer is estopped from so saying, because of the title and ownership which was conferred upon the purchaser by the assignment made by the receivers, and from which, presumably, he received whatever benefit may have arisen out of the payment of the purchase money.   Nor is there anything at all in the claim that the plaintiff is making false representations or deceiving the public in the use he makes of the label and trade-mark.   There is nothing whatever to indicate on the face of the label that Rorke is selling the oil of the société.   Its name does not appear in any way on the label or trade-mark.   On the contrary, it plainly appears that it is not the oil produced by the société that is sold by the plaintiff, but the oil of one Louis Caisson & Co.   The equities of the case, notwithstanding the defendant's denial, are altogether with the plaintiff, and the court below erred in refusing to grant the injunction applied for.

The order must be reversed, with $10 costs and disbursements, and the motion for an injunction granted, with $10 costs to abide the event.   All concur.

---

BUFFALO GERMAN INS. CO. v. THIRD NAT. BANK OF BUFFALO.

(Supreme Court, Special Term, Erie County.  February 4, 1897.)

1. PLEDGES—SALE AFTER DEATH OF PLEDGOR.
    A pledge subject to sale on default may be sold after pledgor's death on demand for payment of his executors and notice of sale to them.
2. CORPORATIONS—STOCKHOLDERS—NOTICE OF TERMS OF CERTIFICATES.
    A purchaser of stock certificates which give the corporation a lien on the stock to secure any indebtedness of the original holder of such certificates takes the stock subject to the lien, though he has no knowledge thereof, the presumption that he read the certificates being conclusive.
3. NATIONAL BANKS—LOAN ON CAPITAL STOCK.
    A contract lien of a national bank on shares of its capital stock to secure a loan which it has made thereon is valid, since Rev. St. U. S. § 5201, forbidding national banks to loan on their capital stock, provides no penalty for its violation, and only subjects the bank to proceedings by the United States to annul its charter.

Action by the Buffalo German Insurance Company against the Third National Bank of Buffalo to compel the cancellation of certain certificates of defendant's capital stock, and the issue of new certi-

ficates to plaintiff in their place, and to recover accrued dividends. Complaint dismissed.

Hickman & Palmer, for plaintiff.

Loren L. Lewis, Jr., and A. Moot, for defendant.

WHITE, J.    There is no dispute as to the substantial facts of this case.    Prior to June 30, 1896, one Emanuel Levi was the owner of 450 shares of the capital stock of the defendant, a national banking association, created, organized, and existing under and by virtue of the laws of the United States, which shares of stock were of the par value of $45,000.    Levi had borrowed from the plaintiff $55,000, and to secure the payment thereof he had given to the plaintiff his promissory notes, payable on demand, with interest, and had delivered, assigned, and pledged to the plaintiff his said 450 shares of stock as collateral security for the payment of his notes.    After he had borrowed the money, and before June 9, 1896, said Emanuel Levi died, leaving a last will and testament, in and by which Rosa Levi and Louis E. Levi were appointed executors thereof, which said last will and testament had been duly probated, and said Rosa and Louis were in fact then such executors, and were acting as such.    On or about said June 9, 1896, and subsequent thereto, the plaintiff duly demanded payment of said Levi notes of said executors, and that said stock so assigned and pledged to it be redeemed by them.    The executors refused to pay or redeem, and thereupon, in compliance with the terms of the contract pledging the stock to it, the plaintiff gave due and sufficient notice to all parties interested that it would sell the stock at public auction on the 30th day of June, 1896, and apply the proceeds of the sale to the satisfaction of the Levi notes, which it proceeded to do and did.    These certificates of stock so pledged and sold recited on their face that no transfer of them on the books of the defendant would be made without the consent of its board of directors, and that the defendant should have a lien upon the stock for any indebtedness to the defendant of the owner of the stock.    There never has been any consent of the board of directors of the defendant to the transfer of the stock in question, and Levi was indebted to the defendant in a considerable amount when he pledged the stock to the plaintiff, and such indebtedness existed at all times thereafter against him to the time of his death, and has existed against his estate ever since.    The certificates of stock so pledged by Levi by their terms named him as the owner, and have never been indorsed with his name or the names of his executors.    The defendant and the Levi executors were duly notified of, and were present at, the sale on June 30, 1896, when the stock was sold, and purchased by the plaintiff for $44,000.    According to the testimony of the president of the defendant, which was the only evidence given upon the question on the trial, the stock is now worth $67,500.    After the sale the plaintiff tendered to the defendant the stock certificates so purchased by it for surrender and cancellation, and demanded that it, the said defendant, accept such surrender, and cancel said certificates, and issue to it, the said plaintiff, new certificates in place of those so tendered for

surrender and cancellation, all of which was refused by the defendant. The defendant has always asserted and claimed a lien upon the stock for the amount of Levi's indebtedness to it at the time of his death. Certain dividends have been declared, and paid to the Levi estate, since the sale of the stock was made to the plaintiff.

The defendant advances and relies upon two propositions as the law of this case, viz.: (1) No effectual or proper decree can be pronounced without the presence of the executors of Levi as pleaded; and (2) the defendant has a lien upon the stock in question superior to the lien of the plaintiff, by virtue of the national banking act, and the statement in the body of the certificates themselves to that effect, and that, consequently, it cannot be required to transfer the stock until it is redeemed from its lien.

The first of those propositions is based upon the assumption that the sale of the stock and its purchase by the plaintiff did not divest the Levi estate of the title to the stock, and that the relations which existed between the Levi estate and the plaintiff prior to the sale were not changed thereby, but still remain as they were before, that of pledgor and pledgee of personal property as security for a debt. In support of that contention the defendant cites the cases of Osterhoudt v. Board, 98 N. Y. 239; Mahr v. Society, 127 N. Y. 452, 28 N. E. 391; Colebrooke, Collat. Sec. § 126; Sickles v. Richardson, 23 Hun, 567; Nichols v. Chapman, 9 Wend. 453. The Osterhoudt Case was an action authorized by statute by taxpayers of the town of Kingston against the board of supervisors of Ulster county and the town auditors of the town to vacate certain audits of town accounts made by the board of town auditors in favor of a large number of individuals, and to restrain the board of supervisors from levying upon the town a tax for their payment on the ground that such audits were "illegal, inequitable, unjust, false, and fraudulent." The individuals in whose favor the audits were made were not made parties to the action. The question of defect of parties in the Osterhoudt Case was not raised by demurrer or answer, as it might and should have been. The plaintiff had judgment, but the court of appeals reversed it upon the ground that the persons in whose favor the audits had been made were necessary parties, for the reason that they were prejudiced by the judgment which restrained the collection of them; and it is an elementary rule in equity that, where the granting of relief will prejudice the rights of persons not parties to the action, the court will not pronounce judgment without hearing such persons. The same rule is prescribed by section 452 of the Code of Civil Procedure. The Mahr Case, following that rule, holds that, where two persons claimed to recover damages for loss under a policy of fire insurance, one of them in possession, claiming to hold the policy as security for a loan, and the other claiming it by virtue of a former assignment, both are necessary parties to an action on the policy. The case of Sickles v. Richardson is claimed by the defendant to be an authority for the proposition that, because the plaintiff was the purchaser of the stock at the auction sale, no valid title was obtained thereby by it. In that case the court expresses an opinion simply that if a pledgee should surrender or deliver the pledged prop-

erty to a sheriff for sale under an execution upon a judgment for the debt secured by the pledge, it would be a waiver of the pledgee's lien in a case where the pledged property consisted of railroad bonds which had never any valid inception except by virtue of the contract of pledge, and by virtue of which the lien waived was created; and that if, under such circumstances, the former pledgee purchased the bond at such sale by the sheriff, it would be in law but a reassertion of his lien. It is further said in the opinion of the court in that case that, under the circumstances detailed, if the sale by the sheriff had been made to a third party, it would have carried a valid title to the bond. The judgment of the court, however, was pronounced upon other grounds. The case of Nichols v. Chapman holds that debts against a dead man's estate cannot be recovered by action until six months have elapsed from the granting of letters testamentary or of administration. By the terms of the contract between the plaintiff and Emanuel Levi, the former was expressly authorized to sell the stock pledged in case of default in payment by him. The right of the plaintiff to sell the stock in accordance with the terms of that contract on demand of payment from Levi's executors, and notice of sale to them, after his death, cannot be seriously questioned. Jones, Pledges, § 598. The cases cited and relied upon by the defendant as above, in support of this contention that the executors of Levi are necessary parties to this action, have not, in my judgment any application to the facts in this case. If the fact were as it is assumed to be by the defendant,—that is to say, if the sale of the stock as made by the plaintiff on June 30, 1896, was invalid, and the plaintiff did not obtain good title to such stock as a purchaser thereof on that sale,—the authorities so relied upon would be applicable. But I can discover no basis for such an assumption. If the sale of the stock and its purchase by the plaintiff was in all respects fair and legal, as it seems to me it was, then it follows that since the sale the Levi estate has not owned or had any interest in the stock, and consequently the executors are neither necessary nor proper parties to this action.

The second claim advanced by the defendant, to the effect that the defendant, by the terms of the contract of pledge between Levi and the plaintiff, has, or at any rate is entitled to have, a lien upon the stock superior to that of the plaintiff, as an original proposition, and independent of the national banking law, seems to be sound. It was plainly stated in the body of the certificates that the defendant was entitled to a lien upon them as against the owner as security for any indebtedness from the owner to the bank. The defendant is organized under the national bank act of 1864, which prohibits the making of such a contract as that between Levi and the defendant, which is evidenced by the recital in the certificates giving the bank the right to a lien upon his stock under the circumstances disclosed by the evidence on the trial of this case. In order to justify such a contract under the statute, it was incumbent upon the defendant to prove that it was necessary to prevent loss upon a debt previously contracted in good faith, and no evidence was given upon that question. The significant and the important

provision of the law the effect of which is in dispute here is the provision prohibiting the defendant from making loans on the security of its own capital stock. The statute itself prescribes no penalty for its violation. It is not claimed that the defendant has ever purchased or is the holder of the stock in question, so that the statutory provision that it shall neither purchase nor hold its own capital stock unless it be necessary for it to do so to prevent loss upon a debt previously contracted has no particular bearing upon the question to be decided here.

The claim of the defendant, then, that it has or is entitled to have a lien superior to that of the plaintiff, rests upon the fact that it was agreed between Levi and the defendant, when the stock was issued, that it should have a lien for any indebtedness from him; and the plaintiff, when it took the stock in pledge, had notice of the agreement, and took it subject to such lien or right to a lien. If the contract thus embodied in the certificate was valid and binding as between the defendant and Levi, the right of the plaintiff must be measured by, and cannot be greater than, those of its assignor. Where the pledgee has actual or constructive notice of any infirmity in the title of the holder of stock, he gets only the rights of the pledgor. Porter v. Parks, 49 N. Y. 564; Moores v. Bank, 15 Fed. 141; Fowle v. Ward, 113 Mass. 548; State Sav. Ass'n v. Nixon-Jones Printing Co., 25 Mo. App. 642; Farrington v. Railroad Co., 150 Mass. 406, 23 N. E. 109; Fisher v. Brown, 104 Mass. 259. It becomes the duty of one who has received knowledge of such fact as should put him on inquiry to make such inquiry, with all due diligence and in good faith, and anything short of this will impose upon the negligent party the same liability as though he had acted with full knowledge of all that the inquiry would have disclosed. Williamson v. Brown, 15 N. Y. 354. In the case of Crocker v. Whitney, reported in 71 N. Y. 161, which went to the United States supreme court, whose decision may be found in 103 U. S. 99, it was finally held that a real-estate mortgage to a national bank to secure future advances, taken in violation of the national banking act, was valid security for such advances, on the ground that the national banking act contains no provision prescribing a penalty for such a violation of the statute; and the violation only laid the bank open to proceedings by the government to annul its charter, and could not be taken advantage of by private parties. To the same effect is Thompson v. Bank, 146 U. S. 240, 13 Sup. Ct. 66, decided in 1892. That the plaintiff here took the stock in pledge with constructive notice of the claim of the defendant that the stock was subject to a lien in its favor for any claim it then had against Levi, is plain, notwithstanding the fact that the plaintiff did not discover the provision in the certificate to that effect until long afterwards. Bank v. Delano, 48 N. Y. 326; Williamson v. Brown, 15 N. Y. 354; Porter v. Parks, 49 N. Y. 564; Farrington v. Railroad Co., 150 Mass. 406, 23 N. E. 109. The plaintiff, when it took the certificates, was bound by the provisions in the certificates, whether it read them or not; the presumption that it did read them is conclusive as matter of law, although false in fact.

· The plaintiff's contention is that, because the provision in the certificates of stock in question that the defendant should have a lien upon them for Levi's indebtedness is in violation of the national bank act, it has no force or effect upon the contract of pledge between Levi and the plaintiff, and in support of this contention cites and relies upon the cases of Bank v. Lanier, 11 Wall. 369; Conklin v. Bank, 45 N. Y. 655; Driscoll v. Manufacturing Co., 59 N. Y. 96; Paine, Banking Laws, p. 533; Bullard v. Bank, 18 Wall. 597; Johnson v. Laughlin, 103 U. S. 803; 16 Am. & Eng. Enc. Law, 152–201, §§ 14, 15.    The Lanier Case was decided by the United States circuit court for the district of Indiana in 1870, and the Bullard Case was decided in 1873.    It is true the decisions in those cases hold that national banks can make no valid loans or discounts on the security of their own stock, unless necessary to prevent loss on a debt previously contracted; and that a contract in violation of that rule is void.    The other cases relied upon by the plaintiff are to the same effect, but, in so far as they are in conflict with the Whitney Case and the Thompson Case, they must, of course, be deemed to have been overruled; and, as has been seen, both the Whitney Case and Thompson Case hold that contracts in violation of the national banking act, where no penalty is prescribed for the violation, are not void, and the violation can only be taken advantage of by the United States in proceedings prosecuted for the purpose.    See, also, Gold Min. Co. v. Rocky Mountain Nat. Bank, 96 U. S. 640; Duncomb v. Railroad Co., 84 N. Y. 190.    I am of the opinion that the sale of the stock and its purchase by the plaintiff were in accordance with the rights of the parties and the law governing them, but that the defendant is entitled to be paid its indebtedness against the Levi estate as of the date of the sale of the stock, before it can be required to accept the surrender of and to cancel the certificates and issue new ones in their stead.    It appears that the defendant holds collateral security for its claim against the Levi estate in addition to its lien or right to a lien upon his stock.    What rule of law may·be applicable in determining the amount due from Levi's estate to the defendant at the time of the sale of the stock and its purchase by the plaintiff, necessary to satisfy the defendant's lien, is not discussed or intended to be passed upon.

The plaintiff's complaint must be dismissed, with costs, on the sole ground that it is entitled to a transfer of the stock in question by the defendant, and to have new certificates issued to it in place of those to be surrendered and canceled when, but not until, it shall pay or tender to the defendant an amount of money sufficient to satisfy and discharge the lien of the defendant upon the stock certificates in question.