### BELL v. MILLS.

#### (Circuit Court of Appeals, Ninth Circuit. May 18, 1903.)

#### No. 917.

1. EXECUTORS — NEGLECT TO FILE CLAIM AFTER ALLOWANCE — RIGHTS OF CREDITOR.

   The neglect of executors to file a claim against the estate, presented to them for allowance, within 30 days after it has been approved and allowed by them and by the court, as required by Code Civ. Proc. Cal. § 1497, cannot prejudice the rights of the creditor.

2. PLEDGES—EFFECT OF PLEDGOR'S DEATH—RIGHT OF SALE.

   The provisions of Civ. Code Cal. §§ 3001, 3002, requiring demand to be made on the pledgor, if he can be found before sale of a pledge, and that actual notice of the sale be given him, do not change the general rule that the right and lien of the pledgee survive the death of the pledgor, and that in such case he may sell the pledge on demand for payment made on the executors of the pledgor, and notice to them of the sale.

3. SAME—NOTICE OF SALE.

   Under the laws of California, the executors of a deceased pledgor, and not his heirs, are the proper persons upon whom to serve notice of sale of the pledge.

4. SAME—MANNER OF SALE—CALIFORNIA STATUTE.

   Code Civ. Proc. Cal. § 1524, relating to estates of decedents, and providing that "interests in personal property pledged and choses in action may be sold in the same manner as other personal property when it appears for the best interest of the estate," merely gives the executor or administrator the right to sell personal property pledged subject to the lien of the pledgee, which it recognizes as surviving, and does not affect the pledgee's right to sell in the statutory manner upon demand and notice.

5. SAME—POWER OF SALE—EFFECT OF PLEDGOR'S DEATH.

   The power to sell a pledge is one conferred by statute in California, and, being coupled with an interest, and one which may be exercised by the pledgee in his own name, it is not revoked by the death of the pledgor, although, under Civ. Code Cal. § 2888, the title to the property remains in the pledgor.

**6. SAME—REQUISITES OF NOTICE.**

Under the requirements of the California statute that a sale of pledged property shall be made "in the manner and upon notice to the public usual at the place of sale," it is not necessary that the published notice of such sale shall state that the property is pledged, or that it is the property of the pledgor, where that is not shown to be usual at the place of sale.

In Error to the Circuit Court of the United States for the Northern District of California.

The plaintiff in error, as special administratrix of the estate of her deceased husband, Thomas Bell, brought an action against the defendant in error for damages for the conversion by him of 675 shares of the capital stock of the Bellingham Bay & British Columbia Railroad Company, 3,401 shares of the capital stock of the Black Diamond Coal Mining Company, and 3,435 shares of the Bellingham Bay Improvement Company. The complaint alleged that Thomas Bell, while the owner of said shares, pledged the same, together with a promissory note which he held, for $29,262.18, to the Bank of California, to secure his liability on promissory notes to that bank in the sum of $50,000, with some accrued interest, and to secure the further sums of $3,976.69 and $3,859.10, his indebtedness to the bank on certain other shares of stock in other corporations; that Thomas Bell died on October 16, 1892; "that the said the Bank of California on the 20th day of July, 1893, duly presented to the executors of the last will of said Thomas Bell, deceased, its claim against said estate, duly verified, which was allowed and approved by said executors on the 20th day of July, 1893, and by the said court on the 20th day of July, 1893, and was thereafter filed in the matter of the said estate on the 31st day of October, 1899"; that on March 22, 1898, the bank delivered to the said executors its written demand for the payment on or before March 25, 1898, of the portion of said indebtedness which was then unpaid, and at the same time delivered to said executors a written notice of the sale of the said shares of stock so pledged, the sale to be made on April 1, 1898, by public auction; that the bank also caused a notice of said proposed sale to be published daily in a newspaper of general circulation published in said city and county from March 26, 1898, to March 31, 1898, both dates inclusive; that on April 1, 1898, pursuant to said notice, the bank caused all of said shares so pledged to be sold at public auction, and the same were sold on said day to the defendant in error for the sum of $40,071.95; that thereupon the bank delivered on said day to the defendant in error certificates which it held for all of said shares, and the defendant in error delivered and surrendered the same to the respective corporations by which they had been issued, and received from said corporations new certificates in his own name, all of which shares he has converted to his own use"; that the defendant in error knew and had notice of the said demand, notice, and sale, and publication of notice, so made by the bank, and of the contents of each thereof; and that no other demand of payment or notice of sale was ever given or made or published. To this complaint the defendant in error demurred on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained, and, the plaintiff in error having declined to amend, judgment was entered for the defendant in error.

T. Z. Blakeman and Warren Olney, for plaintiff in error.

John Flournoy, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Did the court err in ruling that the complaint does not state facts sufficient to constitute a cause of action? It is conceded that it states

no cause of action unless it is shown by the allegations thereof that the sale of the shares of stock to the defendant in error was void. The plaintiff in error contends that there could be no lawful sale of the pledged stock until after the bank's claim against the estate had been proven and allowed by the probate court, and that the complaint shows that the claim had not been allowed by the probate court at the date of the sale, since it alleges that the claim was filed in the matter of said estate on October 31, 1899. It is argued that the claim could not have been approved by that court more than 30 days prior to the date when it was filed, for the reason that section 1497 of the Code of Civil Procedure requires that every claim allowed by the executors and approved by the judge of the superior court must be filed within 30 days thereafter. But we do not so read the complaint. It distinctly alleges that the claim of the bank was allowed by the superior court on July 20, 1893. If it was not filed until October 31, 1899, the default, if any, was that of the executors, and their omission cannot injuriously affect the right of the bank. The mere failure to file the claim after it had been duly approved and allowed by the court could not prevent the executors from redeeming the stock, or from representing the estate in any transaction relating thereto.

It is contended that after the death of the pledgor the bank could only procure the sale of the pledged property by a proceeding in the probate court, since sections 3001 and 3002 of the Civil Code, requiring that a demand be made upon the pledgor, "if he can be found," and that actual notice of sale be given him, cannot, in the event of his death, be complied with, for the reason that he cannot then be found or served. In brief, it is contended that the provisions of those sections of the Civil Code were intended to furnish a remedy only as against a living pledgor. Is this their true construction? It is not disputed that the executors were substituted to the right of the pledgor in the right to redeem the pledged property. We think that if the right and lien of the pledgee survives the death of the pledgor—and we hold that it does—it must necessarily follow that the remedy given by the statute in the absence of a substituted statutory remedy also survives. The plaintiff in error produces no authority to sustain her contention, and we discover nothing in the statutes of California which makes the law of that state in regard to pledges different in this respect from the law generally applied to that subject. In Buffalo German Insurance Co. v. Third National Bank (Sup.) 43 N. Y. Supp. 550, it was held that a pledge subject to sale on default may be sold after the pledgor's death on demand for payment made to his executors, and notice to them of the sale. The court remarked that this right of the pledgors "cannot be seriously questioned."

It is next contended that even if, under section 3002 of the Civil Code, the pledged property of a deceased pledgor can be sold in the manner and under the notice prescribed by the statute, the notice must be given, not to the executors of the will, but to the testator's heirs and devisees. To admit this proposition is by implication to deny the right of the plaintiff in error to institute the present action. If the executor has the right to represent the estate in this proceed-

ing, and to demand damages for the conversion of the shares of stock, the executor was the proper person of whom to demand payment, and to whom to give notice of the sale. Under the laws of California, the executor represents the title of his testator in administering the assets of the estate. The interest of the heirs to pledged property is certainly no greater than their interest in mortgaged real estate. In Bayly v. Muehe, 65 Cal. 345, 3 Pac. 467, 4 Pac. 486, it was held that the heirs of a deceased mortgagor are not necessary parties to an action against the administrator to foreclose the mortgage. It has also been held that a judgment in ejectment against the administrator concludes the heirs, although they were not parties to the action. Cunningham v. Ashley, 45 Cal. 485; De Halpin v. Oxarart, 58 Cal. 101.

Reliance is placed on section 1524 of the Code of Civil Procedure, which provides:

"Interests in personal property pledged and choses in action may be sold in the same manner as other personal property when it appears for the best interest of the estate."

It is argued for this section that it places pledged property of a decedent within the operation of the statute respecting the administration of estates, and that, if a sale of such property be had upon demand and notice after the death of the pledgor, it is done in contravention of the statute. We think that the section so quoted has a meaning directly the opposite of that which is claimed for it. It clearly recognizes the possession and lien of the pledgee as surviving the death of the pledgor. Its effect is to permit the administrator to sell the interest of the estate in pledged property subject to the lien. To authorize the sale subject to the lien is to declare the lien a subsisting one, and to affirm the right of the pledgee to pursue the remedy by demand, notice, and sale, which is afforded him by law. It is to admit, also, that, after a sale by the administrator subject to the lien, the pledgee shall still possess the right to enforce his lien in the only method known to the law—by a sale had upon demand and notice. Section 1524 was intended only to confer upon the administrator, in addition to his conceded right to redeem the pledged property, the right to sell the same subject to the pledge—a right of which he can avail himself only before such time as the pledgee shall have taken steps to enforce his lien by selling the property. Property pledged by the decedent is not property of the estate in the hands of the administrator. This must necessarily be so. The lien of the pledgee is dependent upon possession. If possession could be taken by the administrator, the lien would be destroyed.

It is argued that, conceding that the bank had a special power of sale by virtue of the pledge, the power was revoked by the death of the pledgor; citing Hunt v. Rousmanier, Adm'r, 8 Wheat. 174, 5 L. Ed. 589. That was a leading case, in which it was held that a power of attorney, containing no words of conveyance or assignment, but a simple power to sell and convey, is revoked by the death of the grantor thereof. The court said: "We think it well settled that a power of attorney, though irrevocable during the life of the party,

becomes extinct by his death." But the court recognized an exception to the rule in the case of a power coupled with an interest, and, for illustration of one form of such power, said: "A power to A. to sell for his own benefit would be a power coupled with an interest." But it is said that an express power to sell a pledge cannot, in California, be coupled with an interest, since the title to the pledge remains in the pledgor. The laws of California do not change the nature of pledgee's liens as recognized at common law. It is true that by section 2888 of the Civil Code, which provides, "Notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien," the title still remains in the pledgor. Nevertheless section 2988 provides as follows: "The lien of a pledge is dependent on possession and no pledge is valid until the property pledged is delivered to the pledgee or to a pledge-holder as hereinafter prescribed." The Supreme Court of California has held that a trust deed is mere security, and that the death of the grantor of such a deed does not revoke the power of sale therein contained. More v. Calkins, 95 Cal. 435, 30 Pac. 583, 29 Am. St. Rep. 128. In Jones on Pledges, § 631, it is said: "A power of sale, whether given in a mortgage or in a pledge, is an authority coupled with an interest, and passes to the pledgee's representative." In Schouler's Executors & Administrators, § 203, it is said: "Debts, on the other hand, owing from the deceased, and secured by pledge or mortgage of his personal property, or a lien thereon, leaves the surplus as general assets of the estate, beyond such sum as may be required for discharging the security." The power vested in a pledgee to sell pledged property is not a power granted by the pledgor, or to be exercised in his name. It is a power conferred upon the pledgee by statute—a power absolute in its terms. Said the learned Chief Justice in Hunt v. Rousmanier: "But if the interest or estate passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name." The power is not revoked by the death of the pledgor. Section 1524, Code Civ. Proc.

It is urged that the published notice of the sale, as shown by the complaint, was insufficient, for the reason that it did not state that the shares to be sold were pledged shares, or that they belonged to the estate of the decedent. We are unable to see how the estate of the decedent could have been benefited by inserting these omitted facts in the notice. The statute provides that the sale of such property shall be made "in the manner and upon notice to the public usual at the place of sale." It does not otherwise specify what the notice shall contain. There is no averment in the complaint that the notice in this case was not the notice which is usual at the place of sale. The notice to the executors specified the shares, and stated that they were the shares of stock pledged by the decedent to secure the payment of his notes to the bank, describing the same. The published notice described the shares, and gave notice that they were to be sold by public auction at a specified time and place. It is not alleged that, when offered for sale, any information concerning the stock or its ownership, or the hypothecation thereof, was withheld from the bidders. In Earle v. Grant, 14 R. I. 228, 230, it was said:

"The complainant also seeks to avoid the sale because the advertisement, in advertising the shares for sale, did not name either the pledgor or the pledgee. It does not appear that it is customary to give names in such advertisements. No case is cited which holds that it is necessary to give them."

We think the averments of the complaint, in the light of the statutes applicable thereto, show that the sale was valid and lawful. Such being the case, the complaint fails to state facts sufficient to constitute a cause of action. It becomes unnecessary, therefore, to consider the remaining objection—that the plaintiff in error in her complaint makes no tender of the amount of the debt owing to the bank.

The judgment is affirmed.