THE PEOPLE OF THE STATE OF NEW YORK, Appellant, Respondent, *v.* THE CHATEAUGAY ORE AND IRON COMPANY and Others, Respondents, Appellants, Impleaded with JOSEPH C. TROMBLY and SILAS LE MARE, Defendants.

Third Department, July 7, 1921.

Boundaries — action to recover damages for trespass and cutting timber on State lands — township partitioned in 1822 by map dividing it into lots — map represents entire area of township and not definite area — purpose of description in deed — conveyance of land by lots with reference to map is not controlled by measurements given in deed to State — State has title to lands in dispute — State not bound by unofficial survey fixing boundary line of its purchase — damages not excessive — actual damages only recoverable.

In an action by the State to recover damages for trespass and cutting timber on State lands which turned upon the location of the dividing line between the lands owned by the State and private lands, it appeared that the township in which the lands were situated was partitioned in 1822 by the then owners by reference to a map which divided the township into 300 lots, which was made without an actual survey of the lands, and that both the State and the defendant company acquired their lands by conveyances referring to said map by lot numbers, but in the conveyance to the State there was a description giving the length and width of the land conveyed, which if controlling would place the *locus in quo* outside the State lands.

*Held,* that the map of 1822 was not intended to cover a definite area ten miles square, but was a map of the entire township and that each lot on the map represented one three-hundredth part of the township, as the township in fact existed.

The purpose of a description in a deed is to identify the lands intended to be conveyed, and that part of the description which best identifies the land, in accordance with the intent of the parties, is the controlling part of the description.

Accordingly, the description in the deeds to the plaintiff and the defendant company by lots on the map in question is definite and precise and permits each lot to be located upon the ground, and these descriptions control over a description by metes and bounds in the conveyance to the plaintiff.

On all the evidence, *held,* that the title to lots 190 and 231, which were included in the notice of possession in the Comptroller published in 1894, and of which the Comptroller is deemed to have had actual possession, is in the State.

The so-called Johnson line of 1879 fixing the west boundary of State land in the township in question was made without the authority of and does not in any way bind the State.

The evidence fully sustains the finding of the referee as to the amount of damages, and he was justified in finding that the plaintiff could recover actual damage only.

KILEY, J., dissents in part.

APPEAL by the plaintiff, The People of the State of New York, from so much of a judgment of the Supreme Court in its favor, entered in the office of the clerk of the county of Clinton on the 13th day of June, 1919, on the report of an official referee as adjudges that the plaintiff is entitled to recover only the actual value of the timber cut and removed from the premises described in the complaint.

Appeal by the defendants, The Chateaugay Ore and Iron Company and others, from the whole of said judgment.

*Charles D. Newton* [*Benjamin McClung* of counsel], for the plaintiff.

*Lewis E. Carr* [*Frank E. Smith* of counsel], for the defendant Chateaugay Ore and Iron Company.

*Patrick J. Tierney,* for the defendants O'Brien and Kellogg.

VAN KIRK, J.:

The action is brought to recover damages for trespass and cutting timber upon State lands in township No. 5, Old Military Tract, Clinton county, N. Y., on lots 130, 171, 190 and 231, as numbered and described in the Hannah Murray map, so called, which will be later referred to.

At the time this action was begun the State owned a block of lots in the southeast corner of this township. The Chateaugay Ore and Iron Company, defendant, owned a block of lots in this township lying west of and adjoining the State lots at the point where the trespass is alleged to have occurred. The dispute in this action is over the location on the ground of the dividing line between these two blocks of lots. The defendants John F. O'Brien and George C. Kellogg cut the timber under contract with the defendant Chateaugay Ore and Iron Company, hereinafter called the defendant company.

This township 5 was patented by the State to William Henderson in 1794. The title thereto in 1822 had passed to Hannah Murray and John L. Norton as tenants in common, Hannah Murray owning fourteen-fifteenths and John L. Norton one-fifteenth of the township. These tenants in common determined to partition the township and make mutual conveyances. To this end they had prepared a map. Without making an actual survey they desired to make an actual and fair division of the land. Upon this map, intended to represent the whole township, the area was divided into 300 equal lots numbered consecutively from 1 to 300. Twenty of these lots was an exact one-fifteenth and 280 of these lots an exact fourteen-fifteenths of the township. John L. Norton conveyed to Hannah Murray 280 of these lots by number and Hannah Murray conveyed to John L. Norton 20 of these lots by number, and in the deed of Hannah Murray to John L. Norton it is recited, after giving the numbers, that the lots " as marked in green on the map hereunto annexed have fallen to the share of and have been drawn by the said John L. Norton, and all the residue of the said numbers as marked on the said map have fallen to the share of and have been drawn by the said Hannah Murray." The parties then attached to the partition deeds copies of this map and it was placed of record with the deeds in the Clinton county clerk's office.

The defendants assume that this Murray map represents a piece of ground exactly ten miles square, and that each of the 300 lots is a rectangle one mile north and south and one-third of a mile east and west; and they suggest many difficulties that must arise if this map is used as a means of identifying the lots; that this map must, so to speak, be placed on the township, or on some other map, and adjustments of location and area of lots in some way made; that if, for example, the northeast corner of the map be placed on the northeast corner of the township, and the lots are of the size the defendants claim, then there would be an unallotted strip on the south and west sides of the township. Because they assume the township to be exactly ten miles square, when in fact it is larger, they discuss the " enlarging " of the lots as conveyed in the partition deeds. The error in defendants' position is

in the assumption that the map represents a piece of land ten miles square rather than the township. The exact area of the township not being known, and being supposed to be about ten miles square, the only means of partition between the cotenants, without going to the large expense of an actual survey, and at the same time give to each cotenant his full proportionate share in area and in value as far as possible, was to divide an assumed area into a number of equal lots and then draw for location of these lots by number. At this time there was no accurate survey of the township; it was approximately ten miles square, but, whatever its area, Hannah Murray and John L. Norton, being the sole owners thereof, had the full right to divide the land therein between them in such manner and form as they should agree. This form of partition was accepted without regard to any map or surveys which might have been made theretofore and without regard to the actual dimensions of the township. It was the evident intent of the parties that each lot should be and we hold it was an equal one three-hundredth part of the township, as the township in fact existed. It cannot be supposed that Hannah Murray and John L. Norton, after making the partition deeds, intended to leave unallotted parts of the township undisposed of, which should remain to them as tenants in common. The corners of the township are known and located; the exact length of each side has been determined, so that an exact means of determining the location upon the ground of each lot exists.

Following this partition and division of the township there were many transfers of lots within the township. In most of the deeds the description refers to the Hannah Murray map, attached to the partition deeds, and to the lots conveyed by numbers on that map. In 1868 Edmund Law Rogers had become the owner of a block of lots in the southeast corner of the township, comprising six lots north and south and ten lots east and west. On August 31, 1868, he executed a deed to the State of New York, which contains the following: " Commencing in the south east corner of Township No. 5, Old Military Tract, Clinton County, New York, thence Northerly on east line of said Township No. 5, six miles, thence west three and 1/3 miles, thence south or southerly six miles to

the South line of the Township No. 5, thence East in said South line three and one-third miles to the place of beginning; * * * it being understood that this conveyance is to include lots * * * 130, 171, * * * 190, 231, * * * as the same are laid down on the Hannah Murray map, so-called, referred to in the partition deed of the Township between the said Hannah Murray and John L. Norton and recorded in the clerk's office of the County of Clinton in Liber H of Deeds, folio 158, etc., reference being had thereto."

On May 4, 1881, Andrew Williams and Smith M. Weed conveyed to the Chateaugay Ore and Iron Company thirty-four lots in township 5, referring to the deed by Hannah Murray to James J. Rosevelt, dated April 19, 1825, for a description of the lands conveyed, which description refers to the lots by number as given on the Hannah Murray map. The deed does not include lots numbered 130, 171, 190 and 231, but it does include lots adjoining these lots on the west, namely, 131, 170 and 191. A copy of the Hannah Murray map is attached to this deed.

It thus appears that both the plaintiff and the defendant company acquired their respective lands by descriptions identifying the lands by the lot numbers on the Hannah Murray map and each derives its title by mesne conveyances from Hannah Murray and John L. Norton.

The defendant company urges strongly that, in the deed to the State, the description, giving the length of the plot of ground conveyed six miles and the width three and one-third miles, is a particular description and must prevail over that portion of the deed which refers to the lots intended to be conveyed by number. It is now known that the township is something more than ten and one-half miles north and south and more than eleven miles on the south side east and west. On the Hannah Murray map there are thirty lots across the south side of the township. If the township were ten miles broad east and west, each lot would be one-third of a mile in width; but, since the township is eleven miles east and west, each lot is something in excess of one-third of a mile in width. If the west boundary of the block of lots

conveyed to the State is three and one-third miles from the east boundary of the township, it would not include the lots in dispute, 130, 171, 190 and 231. The purpose of a description in a deed is to identify the lands intended to be conveyed, and that part of the description which best identifies the land, in accordance with the intent of the parties, is the controlling part of the description. The description in the deeds to the plaintiff and the defendant company by lots on the Hannah Murray map is definite and precise and permits each lot to be located upon the ground, and these descriptions must be given the same force and effect as those contained in the partition deeds. The referee, therefore, rightly held that, under the aforesaid deed to the State, the State acquired the title to a rectangular piece of land in the southeast corner of township 5, the east side of which rectangle was three-fifths of the length of the township north and south and the south side one-third the width of the township east and west. An examination of the Hannah Murray map attached to each of these deeds and of the map as filed with the partition deeds in the clerk's office of Clinton county would have disclosed to the parties this fact. In *Cambridge Valley Bank* v. *Delano* (48 N. Y. 326, 336) the court said: " The principle of equity is well settled that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact, as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted." By the descriptions in the aforesaid deeds to the State and to the defendant company it plainly appears that there is no piece of land between the State land and the defendant company land; and that defendant company did not acquire title to lots 130, 171, 190 and 231 on the Hannah Murray map, but did acquire the lands next adjoining those lands on their west side, and that the dividing line between the lands of the plaintiff and defendant company was a line running north and south substantially parallel to the east line of the township and one-third of the distance between the east and west sides of the township.

The defendant company has raised a question concerning the title to lots 190 and 231, but a careful examination of the

evidence has convinced us that the title to these lots is in the State.

The lands, the title to which is in dispute, were wild, vacant, forest lands and unfenced. In December, 1894, the notice of possession in the Comptroller, as provided by statute (Laws of 1893, chap. 711, § 13) was duly published, and lots 130, 171, 190 and 231 in this township 5 are included in the notice, since which time the Comptroller is deemed to have been in actual possession of those lots. (*Saranac Land & Timber Co.* v. *Roberts,* 195 N. Y. 303, 321.)

Much evidence is presented by defendants, on account of which they claim that the construction of the deed above ruled is inconsistent with the facts and will occasion much confusion. The ruling is consistent with the position the Comptroller took immediately after the deed of 1868 was taken by the State and with the position generally maintained by the State and by those generally who have transferred lands in this township. It will be impossible in an opinion of any reasonable length to go into detail concerning these several contentions, but we have examined the record, in connection with the appellant's brief, and find that the rulings of the referee were justified. We do not think that the Johnson line of 1879 fixed the west boundary of the State lands in this township. We find nothing in the record justifying a finding that the acts of Mr. Johnson, in the making of a survey in 1879 and in marking a line, were done by authority of the State, or that the State was bound by any of his acts at this time (*People* v. *Santa Clara Lumber Co.,* 213 N. Y. 61; *Wells* v. *Johnston,* 171 id. 324), or that there has been any such acquiescence by the parties in the so-called Johnson line of 1879 as would establish this line as the west boundary line of the State land. The survey made by Johnson in 1881 shows that the width of the lots on the Murray map was in excess of one-third of a mile by about two chains, and the map following this survey establishes the west line of the State lands a considerable distance west of the so-called Johnson line of 1879.

An examination of the Murray map and the so-called Vaughan map discloses that it would be quite impossible to consider the lots in the Murray map as subdivisions of the lots in the Vaughan map. Upon the Vaughan map the north

half of the township was divided into rectangular lots one mile north and south and one-half mile east and west, and in the south half into rectangular lots one mile square; but the lines are exceedingly irregular and the lots of unequal size. We are unable to adjust the maps one to the other, or to conclude that the Vaughan map can in any way affect the decision in this case.

Nor need this decision embarrass other landowners in township 5. Only the parties to this action are bound by this decision. Such other owners of land in this township as there are will have their cases decided upon the facts shown. The Hannah Murray map has been of record since 1822, subject to the inspection and inquiry of any person purporting to purchase lands in the township, and has been referred to generally in conveyances of lands within the township.

The award of damages is justified by the evidence. There was no dispute as to the quantity of timber cut, or its kind; the dispute is as to the value, and the finding of the referee is supported by the evidence, under the correct rules governing damages in such cases.

The referee was justified in finding that the plaintiff could recover actual damage only.

The judgment should be affirmed, with costs.

All concur, except KILEY, J., who concurs with affirmance, except as to the amount of damages, which he would reduce from three dollars and twenty-five cents to two dollars a cord.

Judgment affirmed, with costs.