M. R. M. REALTY Co., INC., Appellant, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

(Argued January 22, 1936; decided March 3, 1936.)

*Henry S. Miller* for appellant. The water grant from the city vested title in the grantee, subject to the performance of conditions subsequent which gave to the city the right to re-enter and insist upon forfeiture of the estate upon breach of any condition. (*Vail* v. *Long Island R. R. Co.*, 106 N. Y. 283; *Upington* v. *Corrigan*, 151 N. Y. 143; *Fowler* v. *Coates*, 201 N. Y. 257; *People* v. *Wainwright*, 237 N. Y. 407; *Milan* v. *Towner*, 229 App. Div. 428.) The title is unmarketable. (*Monogram Development Co.* v. *Natben Construction Co.*, 253 N. Y. 320; *Methodist Episcopal Church Home* v. *Thompson*, 108 N. Y. 618; *Van Vliet & Place, Inc.*, v. *Gaines*, 249 N. Y. 106; *Cerf* v. *Diener*, 210 N. Y. 156; *Brokaw* v. *Duffy*, 165 N. Y. 391; *Greenblatt* v. *Hermann*, 144 N. Y. 13; *Stirnweis* v. *Caciappo*, 258 N. Y. 68; *Weinstein* v. *Weber*, 178 N. Y. 94; *Simon* v. *Vanderveer*, 155 N. Y. 377; *Moore* v. *Williams*, 115 N. Y. 586; *Fleming* v. *Burnham*, 100 N. Y. 1; *Vought* v. *Williams*, 120 N. Y. 253; *Irving* v. *Campbell*, 121 N. Y. 353; *Shriver* v. *Shriver*, 86 N. Y. 575.) The city has not waived or abandoned its rights under the covenants and conditions of the grant; on the contrary, it has repeatedly asserted its rights. (*Matter of Green* v. *Miller*, 249 N. Y. 88.) Plaintiff had the right to rely upon the title certificate, to assume that the title policy would contain no wider reservation than that in the title certificate, and to assume that the policy of insurance would conform to the agreement of the defendant to insure a good and marketable title in fee. (*Northeastern Shares Corp.* v. *International Ins. Co.*, 240 App. Div. 80; 265 N. Y. 574; *Grubelich* v. *New Brunswick Fire Ins. Co.*, 240 App. Div. 822; 264 N. Y. 554; *Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Mead* v. *Bunn*, 32 N. Y. 275; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *Holly Hotel Co.* v. *Title Guarantee & Trust Co.*, 147 Misc. Rep. 861; 239 App. Div. 773; *Rosenwasser* v. *Globe Indemnity Co.*, 224 N. Y. 561; *Farrell* v. *Merchants' Mut. Automobile Industry*, 203 App. Div. 118; *Miller* v. *Union Indemnity Co.*, 209

App. Div. 455; *Hessler* v. *North River Ins. Co.*, 211 App. Div. 595.)

*Henry M. Bellinger* and *C. Elmer Spedick* for respondent. The title is marketable. (*Schermerhorn* v. *Niblo*, 2 Bosw. 161; *Herbert* v. *Lansing*, 6 Lans. 493; *Hellreigel* v. *Manning*, 97 N. Y. 56; *Post* v. *Bernheimer*, 31 Hun, 247; *Hutton* v. *Webber*, 17 N. Y. Supp. 463; *Moser* v. *Cochrane*, 107 N. Y. 35; *Cambrelleng* v. *Purton*, 125 N. Y. 610; *Carroll* v. *McKaharay*, 35 App. Div. 582; *Todd* v. *Union Dime Sav. Bank*, 128 N. Y. 636; *Ruff* v. *Gerhardt*, 73 App. Div. 245; *Hagan* v. *Drucker*, 90 App. Div. 28; *Johnston* v. *Garvey*, 139 App. Div. 659; *Bardes* v. *Herman*,144 App. Div. 772; 207 N. Y. 745; *Postley* v. *Kafka*, 213 App. Div. 595.) The city is estopped from claiming under the condition subsequent for it has abandoned and waived the method of street improvement contemplated by the grant. (*Town of Huntington* v. *Titus*, 50 App. Div. 468; 169 N. Y. 579; *Murray* v. *Harway*, 56 N. Y. 337; *Devlin* v. *Mayor*, 63 N. Y. 8; *Conger* v. *Duryee*, 90 N. Y. 594; *Gillette Bros.* v. *Aristocrat Restaurant*, 239 N. Y. 87; *Lynch* v. *Joseph*, 228 App. Div. 367; *Duryee* v. *Mayor*, 96 N. Y. 477; *Wheeler* v. *Dunning*, 33 Hun, 205; *Ludlow* v. *N. Y. & H. R. R. Co.*, 12 Barb. 440; *Birdsall* v. *Grant*, 37 App. Div. 348; *Burns Bros.* v. *City of New York*, 178 App. Div. 615; 232 N. Y. 523.)

HUBBS, J. The appellant entered into a contract to buy property on Tenth avenue in New York city. It applied to the respondent for an examination of title and title insurance. Prior to the closing, respondent certified in writing that the title had been examined and approved by it and that the vendor could convey a good and marketable title thereto in fee, clear of all incumbrances and defects except " 3. Restrictive Covenants, Easements and Agreements. Covenants and City Grants as to building wharf, road, &c. in L. ' G ' p. 491 and L. 328, cp. 91."

Annexed to the report was a typewritten sheet entitled: " Covenants as to Streets in Liber ' G ' of City Grants

Page 491 and Liber 328 C. P. 91," which set forth covenants taken from a grant in 1827 from the Mayor of the city of New York to one Boyd in substance requiring the latter, his heirs and assigns, when and if required by the city, to "build, erect, make and finish" certain wharves or streets and a bulkhead, and thereafter to "uphold and keep in good order and repair the whole of those parts of the said streets and wharves, and the said bulk-head which he and they have covenanted to build, erect and make, as aforesaid."

Upon such certificate title was closed, appellant being represented on the closing by an attorney representing respondent.

Later a title policy was issued which excepted objections to title affecting said premises arising under "Covenants *and conditions* contained in Grant recorded in Book 'G,' City Grants, New York Comptroller's Office, at page 491, and in instrument recorded in Liber 328 of Conveyances at page 91, in the Office of the Register of the County of New York."

The grant referred to is the so-called Boyd grant. The inclusion of the words "and conditions" in the title policy, though not contained in the certificate, was unnoticed, the policy was accepted and no question arose until three and one-half years later, when appellant contracted to sell the premises "Subject also to covenants and conditions contained in Grant recorded in Book 'G,' City Grants, New York Comptroller's Office, at page 491, and in instrument recorded in Liber 328 of Conveyances at page 491, in the office of the Register of the County of New York, a copy of said covenants attached to title certificate of the Title Guarantee & Trust Co., was exhibited to the purchaser and read by him."

The purchaser submitted the title to another company for examination and it declined to insure on the ground that the title was not good. Appellant then found that

in addition to the covenants set forth in the certificate, the Boyd grant contained a provision that it should be null and void if there was a failure to perform the covenants on the part of the grantee, his heirs and assigns. Appellant's vendee refused to complete the purchase and sued to recover the down payments. The matter having been referred to the respondent, it undertook to get a release from the city. Being unsuccessful in that effort, it undertook the defense of the action and subsequently advised a settlement whereby the appellant kept the down payment amounting to $2,000 and both parties were released from the obligations of the contract.

About four years after the first contract was made, appellant again contracted to sell the property, " Subject also to covenants and conditions contained in Grant recorded in Book ' G,' City Grants, New York Comptroller's office, at page 491, and in instrument recorded in Liber 328 of Conveyances at page 491, in the Office of the Register of the County of New York as shown in the report of the Title Guarantee & Trust Co., dated June 29, 1925 and exhibited to the purchaser," but title was rejected by the second purchaser. Notice of rejection was given to the respondent which declined responsibility. Thereupon, this action was brought to recover of the respondent the loss alleged to have been sustained by the appellant. Four causes of action were set forth:

*First.* Negligence in the searching of title by defendant as attorney or conveyancer.

*Second.* Breach of agreement to issue and deliver a policy guaranteeing a good title.

*Third.* An agreement to insure the title free from incumbrances arising out of the conditions in the Boyd grant.

*Fourth.* For reformation of the policy to eliminate the exception of conditions in the Boyd grant.

The Special Term dismissed the first and third causes of action but upheld the second and fourth, reformed the policy and awarded judgment for $18,000 and interest

from 1925 amounting to about $11,000. The Appellate Division reversed, holding the title marketable, and also that the appellant was put upon notice as to the precise terms of the water grants.

Ordinary knowledge on the part of a purchaser of the existence of an incumbrance is sufficient to put him on notice as to its extent.

" When a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence fatal to his plea of ignorance." (*Kingsland* v. *Fuller*, 157 N. Y. 507, 511.)

" The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact, as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record which a prudent purchaser ought to examine, to induce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained." (*Cambridge Valley Bank* v. *Delano*, 48 N. Y. 326, 336.)

The covenant to build wharves and streets of itself would suggest the existence of a provision for some penalty for non-compliance. Reference to book and page of the record of the grant was sufficient to put the appellant on notice as to the extent of the grant which was a grant not only subject to covenants but also upon condition. The grant as a whole was a link in, if not the foundation of, the title which appellant was about to purchase.

The appellant contends that it should be excused from the operation of that rule because the covenants were

set forth in detail in the certificate and the conditions were not set forth. The respondent while furnishing a copy of the covenants, in no wise represented that it was furnishing a copy of the grant to which it made reference in its certificate. It clearly remained appellant's duty to inform itself as to the terms of the grant as a whole.

Though we were to reach a contrary conclusion upon the effectiveness of the certificate to inform or put appellant upon notice as to the presence in the grant of the conditions mentioned, there is another and compelling reason why appellant is not entitled to judgment. The grant, containing the covenants and conditions, was made in 1827. Since then, despite the requirement placed upon the grantee and his successors in interest to build streets, wharves and bulkheads, and to maintain the streets, wharves and bulkheads so built, the city itself shortly after the grant built and has since maintained the streets. In the streets so built, over which the city has maintained jurisdiction and control, it has granted easements and rights permitting the erection of a double-track railroad, and the construction of subways for electric, telephone, fire alarm and city department wires, with manhole covers and other equipment. It has permitted the installation of gas mains and has itself built sewers. Likewise, it has exercised control along the water front by giving grants on property in the river, adjacent to the property in question, which has been filled in and outside of which the city has built and maintained a bulkhead.

The grant contained no provision for the maintenance of city-built streets, wharves or bulkheads, but rather for the maintenance of such improvements built pursuant to requirements of the grant.

Only by a restoration of the original water front line could a bulkhead or wharves ever be required or built adjacent to the Boyd tract. Only by abandonment and destruction of streets already built and incumbered with

easements and rights, could the city place itself in position to exact fulfillment of the covenant either to build or maintain streets. Under such a state of facts, any rights which the city possessed with respect to the building and maintenance of streets, wharves and bulkheads, have long since been waived and could not now be enforced. While the covenants and conditions of the grant appear on the record as incumbrances upon the title, they are not such defects as to justify rejection of the title as unmarketable. The objection based thereon is without substance and could not be sustained.

The rule that a doubtful title cannot be forced upon a purchaser does not apply.

Had the appellant, in the action on its first contract, not settled but, rather, had it availed itself of its defense of marketability of title, its contract could have been sustained and no cause of action would have arisen against the respondent. It chose not to adopt that course, whether upon its own volition as a result of the opportunity of retaining the deposit and its property as well, or upon the advice of the counsel provided by the respondent. Likewise, on its second sale it could have sustained its claim of marketability of its title through the medium of an action for specific performance. With the clear proof that its title is in fact marketable before us, to permit it to retain the property and recover of this respondent substantial damages upon a claim of mistake and constructive fraud would permit it to enrich itself at respondent's expense.

The judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment affirmed.