■ In the Matter of DELAFIELD 246 CORP., Respondent, v CITY OF NEW YORK et al., Appellants, et al., Respondent. [782 NYS2d 441]—

Judgment, Supreme Court, New York County (Louis B. York, J.), entered April 10, 2003, which granted the petition to permanently enjoin respondent, the City of New York, from selling or foreclosing on certain tax liens apportioned against petitioner, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

This CPLR article 78 proceeding, brought pursuant to an order to show cause, involves a 24 lot (of a total of 33) subdivision in a partially developed private residential community in Riverdale, Bronx County. Petitioner-respondent Delafield 246 Corp. (hereinafter Delafield), a real estate development corporation, purchased the property at a mortgage foreclosure sale in August 1991. Prior to the purchase the property had become tax delinquent. In an effort to avert foreclosure, ROC Century Associates (hereinafter ROC), one of the mortgagees, entered into an in rem installment agreement (hereinafter Agreement) with respondent-appellant, New York City, through its Department of Finance, on March 14, 1990. The Agreement covered the tax period from January 1, 1988 through June 30, 1990. The tax arrears of $889,933 for that period comprised delinquent taxes and interest accrued as of March 14, 1990, the date of the Agreement.

Under the provisions of the Agreement, ROC, in addition to paying current taxes, agreed to make an initial down payment of $133,485, followed by 32 quarterly installments of $23,638. The Agreement provided in part: "A portion of each installment payment will be applied to interest, which continues to accrue on any unpaid balance of principal. The balance of principal and accrued interest remaining at the end of the stated number of installments shall be paid in a lump sum, or in additional installments . . . as may be agreed to by the Bureau of City Collections." ROC made the initial down payment followed by six quarterly payments of $23,638 before foreclosing its mortgage on the property in 1991. The property's listed assessed value for that tax year indicates a full market value of $4.78 million.

Delafield purchased the property at the foreclosure sale in August 1991 for $1 million. Delafield did not pay the delinquent taxes at closing but bought the property "subject to all unpaid taxes, assessments and water rates . . . together with such interest or penalties as may have lawfully accrued thereon to the date of payment including, but not limited to, all obligations and payments required to be made with respect to the mortgaged premises, as provided in the In Rem Agreement." Neither the City nor the City Department of Finance was a party to the mortgage foreclosure judgment, nor did either entity expressly

agree to Delafield's assumption of the installment agreement. Delafield, however, did receive confirmation from the City's Law Department that so long as Delafield paid the taxes then due for the period from July 1, 1991 through December 31, 1991, the Agreement would remain "in full force and effect."

On the day prior to closing, Delafield's title company representative requested and received from the City the property tax bill which showed that the amount of delinquent taxes and interest outstanding, as of that date, was $838,114. This was the amount outstanding after ROC had paid a total $275,313 (the initial down payment and six quarterly installments).[1]

Delafield paid 26 quarterly installments over the next seven years, making its final payment in January 1998, even though, according to the City, the delinquent charges had not been paid in full. Indeed, a status report requested by Delafield in mid-1997 established that, at that time, Delafield still owed approximately $1,128,000. Nevertheless, Delafield made only three more payments, those being the last three of the specified 26 installments of $23,638. Delafield failed to make the "lump sum" payment required by the Agreement to settle the balance of the principal as well as the interest which had accrued over the seven-year period during which Delafield was paying the delinquent taxes in quarterly installments. Nor did Delafield make any other arrangement to settle these arrears.

In November 1998, the property was subdivided by Delafield into 24 separate tax lots and the total arrears were apportioned among those 24 new lots. Tax bills and delinquency notices listing the proportionate shares of the arrears were sent to Delafield. Delafield, however, did not make any payments towards the arrears.

The Agreement specifically provided that "failure to pay current or delinquent taxes or other charges as agreed shall result in cancellation of the agreement . . . and the property shall become eligible for foreclosure." Therefore, the City's Department of Finance authorized the sale of four tax liens in June 2001. JER Revenue Services, which services the City's sale of and foreclosure on tax liens, sent Delafield notice that if the tax liens were not paid or settled within one year then the four tax

---

**1.** Had the agreement contemplated the entire amount of $889,933 being paid off by the initial down payment and 32 installments, then the amount of the tax bill, in August 1991, would have shown an outstanding amount of only $614,620.

lots would be subject to foreclosure.[2] The City then scheduled the sale of 20 of the Delafield tax liens to a tax lien trust in May 2002 with a notice of the tax lien sale being published in the Daily News in March 2002. Delafield then commenced an article 78 proceeding by order to show cause to enjoin the City from selling or foreclosing on any of the liens. The sale of the 20 liens (as well as any action to sell or foreclose on the other four liens) was stayed by the order to show cause granted by the Supreme Court on May 28, 2002.

The Supreme Court adopted Delafield's interpretation of the agreement wherein Delafield's principal claimed that he understood the Agreement to mean that he would be "fully paid up to the last installment except for any payment which had not been made or was only partially made." The court accepted the claim of Delafield's principal that "had [he] thought that the accrued interest would amount, at this point, to over $3 million dollars, he would never have bought the premises." The court concluded that the clause of the Agreement ("balance of principal and accrued interest remaining at the end of the stated number of installments shall be paid in a lump sum") was ambiguous, and therefore had to be construed against the City as drafter of the Agreement. We disagree, and reverse on the grounds that the court below was without authority to invalidate a decade-old tax lien.

An article 78 proceeding may be used to challenge an assessment when a taxing authority has exceeded its power (*Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg*, 78 NY2d 194, 204-205 [1991]). It is arguable that this is not such an instance and that the article 78 proceeding was improperly brought to challenge the plain meaning of the underlying agreement. In any event, even had this proceeding been properly brought as an article 78 under Delafield's theory, such proceeding would have been time-barred given that, since the purchase of the subject property, Delafield was in regular receipt of tax bills reflecting the exact amounts of the unpaid delinquent taxes and accruing interest. At the heart of the issue is Delafield's claim that the Agreement can only be read to mean that after the 32nd and final installment the delinquent taxes and interest would be fully paid, and thus nothing more would be owed to the City under the Agreement. However, Delafield's reliance on its interpretation of the Agreement is ir-

---

**2.** Although the City sold the four liens, it subsequently repurchased them as the City did not give adequate notice to Delafield regarding the sale of the liens. After updating its information on all 24 lots, the City's Department of Finance resumed its efforts to collect on the liens.

relevant because the court acted outside the scope of its authority in stopping the City's statutory sale of tax liens, absent evidence that the taxes and interest had been paid in full.

All real property in the state is taxable unless specifically exempted by statute (RPTL 300). Further, the City, and specifically the City's Department of Finance, are charged by statute with the assessment, levying and collection of real property taxes, and are further specifically directed to charge interest on unpaid taxes (Administrative Code of City of NY § 11-224). The interest rate to be charged is established by statute (*see* Administrative Code § 11-332 [b]; § 11-319 [b] [6]). Further, there can be no reduction of the rate of interest to be charged (Administrative Code § 11-302). All real property taxes and assessments and the interest imposed thereon are, by operation of law, liens upon the real estate and "shall continue to be, until paid" (Administrative Code § 11-301; *see also* RPTL 102 [21]). The sale of tax liens by the City and the right of the purchaser to foreclose these liens have been upheld by this Court (*NYCTL 1996-1 Trust v Railroad Maintenance Corp.*, 266 AD2d 39 [1999], *lv dismissed* 94 NY2d 899 [2000]).

In the instant case, it is undisputed that the delinquent taxes for the years at issue were lawfully assessed and levied. Consequently, it would be impossible to construe the Agreement as an installment payout plan that effectively would have reduced the tax obligation that arose by operation of law rather than as a forbearance agreement which contemplated a final balloon payment. Indeed, while Administrative Code § 11-405 authorizes the City's Department of Finance, at its discretion, to enter into a forbearance agreement with delinquent taxpayers, these agreements do not settle or reduce the tax liability but rather set up a payment plan that postpones foreclosure for so long as the required payments are made. The judgment on appeal effectively excused Delafield not only from paying a portion of the delinquent taxes and interest owing at the time of purchase but also granted Delafield a retroactive 0% interest loan on the outstanding 26 installments assumed by Delafield. This was error since respondent-appellant lacked the authority to forgive or compromise a real property tax debt (RPTL 1182). More significantly, any such agreement would be invalid and unenforceable since it would effectively grant Delafield an unconstitutional gift (NY Const, art III, § 17; art VII, § 8 [1]; *see also* 13 Warren's Weed, New York Real Property, Taxes Affecting Real Property § 6.04 [1] [4th ed]).

Finally, estoppel is not generally available against a government agency to prevent it from carrying out its statutory duties,

especially when the duty involves taxation (*Matter of Frye v Commissioner of Fin. of City of N.Y.*, 62 NY2d 841, 844 [1984]; *see also Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 282 [1988], *cert denied* 488 US 801 [1988] [government agency cannot be estopped from carrying out statutory duty even where there are harsh results]). In any event, we reject the determination by the court that the allegedly ambiguous clause of the Agreement which Delafield allegedly relied upon to its detriment should be construed against the City. In the first place, the City was not a party to the judgment of foreclosure and sale whereby Delafield assumed the obligations of the Agreement; second, the Agreement did not purport to be a statement of the property's tax account at the time of Delafield's purchase of the property; third, Delafield's title company representative was sent a tax bill reflecting arrears of principal and accrued interest as of the day prior to closing; and fourth, all tax bills and delinquency notices sent to Delafield since it purchased the property showed the exact amount of arrears which differed from any computation that could be made pursuant to Delafield's interpretation of the Agreement. Indeed, even if Delafield's principal had no knowledge of the amount of the tax arrears outside of the Agreement, he would still be hard-pressed to explain why he ignored the Agreement's incorporation by reference of the provisions of title 11, chapter 4 of the Administrative Code. These provisions specifically state, inter alia, that such agreements cannot settle or reduce tax liability. Ultimately, as a matter of well-settled law, Delafield is "chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact, as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted" (*Cambridge Val. Bank v Delano*, 48 NY 326, 336 [1872]). Concur—Tom, J.P., Saxe, Ellerin, Marlow and Catterson, JJ.